# UNITED STATES DISTRICT COURT FOR THE
# SOUTHERN DISTRICT OF TEXAS
# HOUSTON DIVISION

| | |
|---|---|
| VITA INTERNATIONAL, INC.<br><br>*Plaintiff*,<br><br>v.<br><br>FORO ENERGY, INC.<br><br>*Defendant*. | Civil Action No. 4:18-cv-1663<br>Jury Demanded |

## PLAINTIFF'S FOURTH AMENDED COMPLAINT

COMES NOW Vita International, Inc. ("Vita" or "Plaintiff") and complains of Foro Energy, Inc. ("Foro" or "Defendant") as follows:

### NATURE OF THE CASE

1. Plaintiff files this Complaint seeking relief under 18 USC § 1836 (Defend Trade Secrets Act "DTSA") against Defendants for misappropriating trade secrets belonging to Plaintiff. Plaintiff also brings supplemental claims arising under Texas state law, including but not limited to, the Texas Uniform Trade Secrets Act ("TUTSA") arising from the same case or controversy as the federal question claim.

### JURISDICTION AND VENUE

2. Defendant Foro is subject to jurisdiction in Texas because Foro has an office in Texas, regularly conducts business in Texas, and thus has systematic and continuous contacts with Texas subjecting it to general jurisdiction in Texas. In addition, Foro committed an act in furtherance of the trade secret misappropriation in Texas. *See* 18 USC § 1837. Venue is appropriate in the Southern District of Texas, Houston Division because

a substantial amount of the events giving rise to this suit occurred in Harris County, Texas and because both Defendant and Plaintiff reside in Harris County, Texas.

3. The Court has subject matter jurisdiction because Plaintiff's claims arise under 18 USC § 1836(c), creating federal question jurisdiction. The Court has supplemental jurisdiction over the state law claims under 28 U.S.C. § 1367(a).

## PARTIES

4. Plaintiff Vita is a Texas Corporation with its principal place of business in Harris County, Texas, and may be contacted and served through the undersigned counsel.

5. Defendant Foro is a Delaware Corporation and has previously appeared in this case.

## STATEMENT OF FACTS

**A. Foro Approaches Vita.**

6. Vita is internationally known for its engineering and production of certain oilfield service products. Particularly, one of its principals, Shaaban ("Shaaban") specializes in the engineering and design of deployment systems to inject tubing into wells ("Deployment Systems"). Shaaban co-invented one such Deployment System that he obtained a patent on in 1998, that he assigned to Vita ("Patent 5,765,643").

7. Aware of Vita's expertise, Foro approached Vita as early as April of 2013 to inquire regarding Vita's products. Later, in May of 2014, Foro made a specific request of Vita for a Deployment System. The parties later met to discuss Foro's needs. Foro required that Vita design Deployment System to accommodate flat pack tubing as opposed to the round tubing that its Deployment Systems normally accommodated. The Deployment

System requested by Foro was for well decommissioning, which is a multi-billion dollar industry.

8. Then, in June 2014, Vita informed Foro that it was interested in moving forward with the design project, provided that Vita would need approximately one year to complete the prototype development and construction. Foro responded that, prior to purchasing the Deployment System, that Foro would need to "go through the design" when it was completed to determine whether it wanted to "move forward".

9. Prior to proceeding with designing the Deployment System, Vita required that Foro sign a non-disclosure agreement (the "NDA"), which protected Vita's confidential information and trade secrets developed during the process of developing the prototype for Foro from being used or disclosed by Foro to any other party. The NDA further restricts the usage of the Vita's confidential information and trade secrets by Foro to joint development efforts between Vita and Foro. The parties executed the NDA on July 29, 2014.

10. Over the course of the next eight months, Vita worked with Foro exchanging technical information, drawings, and specifications to design the Deployment System to Foro's approval. During these discussions, Foro disclosed that it was working with an undisclosed Norwegian firm to obtain certification for the North Sea area. Finally, on March 5, 2015, Vita submitted its final proposal to Foro with all specifications as well as pricing.

11. Very shortly after submitting its final proposal, Foro informed Vita that it was going to go in a different direction. Vita followed up with Foro in the ensuing months to see if there was continued interest, but Foro did not respond. Finally, in June of 2016 Vita

followed up with Foro, who disclosed that it had allegedly built another Deployment System distinct and separate from the Vita Deployment System.

### B. Foro's Illegal Conduct And Motives Revealed.

12. After growing suspicious of Foro's actions, Vita's Shaaban began researching into Foro's business activities.

13. Shaaban discovered that an Estonian company called DECK Engineering, OU's ("DECK") website reveals that it sells a Deployment System nearly identical in design, appearance, and functionality to the Vita Deployment System, which it claims was developed with "Norwegian and American experts". Vita would later learn that these Norwegian and American experts were, in fact, a Norwegian company called Hytech AS ("Hytech") and, of course, Foro. Hytech also lists the Deployment Wheel for sale on its website. *See* https://hytech.no/hytech-engineering-services/products-system/reel-winch/.

14. This same Deployment System sold by DECK was commissioned by Foro through Hytech and has been utilized by Foro. In fact, this Deployment System was put on the market only *six months* after Vita's final proposal in March 2015.

15. In sum, Foro committed industrial espionage to obtain Vita's confidential and trade secret information to utilize cheap foreign labor to build the Deployment System using Vita's trade secrets. As such, Foro is liable for misappropriation of trade secrets under the DTSA as well as TUTSA.

16. In addition, based on information publicly available on the internet, Defendants continued to use, disclose, or access the confidential information and trade secrets at issue after the initial misappropriation.

17. For example, on DECK's website at http://www.deckengineering.ee/projects/all-projects/deployment-wheel-for-umbilicals/, the Deployment System misappropriated from Plaintiff was listed for sale as of the time of this suit's filing. Foro's website likewise exhibits pictures of the Deployment System as of the date of the filing of suit at http://www.foroenergy.com/offshore-decomissioning.

18. Also, in an article in Conoco Phillips Spirit Magazine issue Q2 2017 provides details of a collaboration between Conoco Philips and Foro that occurred in Sept 2016 offshore of Norway at the "Ekofisk Alpha" field on the Drill (6) rig utilizing the Deployment System. Such collaboration continued in the summer of 2017 on the "Ganymede ZD platform" as well as other locations (such as Ensco 92) involving "seven wells" in the Southern North Sea in the UK sector.

19. On information and belief, Foro continues such acts of utilization, disclosure, or access to the confidential information and trade secrets at issue after the initial misappropriation.

## CAUSES OF ACTION

### Count 1: Misappropriation of Trade Secrets under 18 U.S.C. § 1836 (DTSA)

20. Plaintiff incorporates all paragraphs of this Complaint in this cause of action as though here set out in full.

21. Plaintiff owns valuable trade secrets in the design and specifications of the Vita Deployment System, which is used in the oil and gas products and services industry in interstate and foreign commerce.

22. Plaintiff took reasonable measures to protect the design and specifications of the Vita Deployment System through the NDA.

23. The design and specifications of the Vita Deployment System derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. This is, in fact, why Defendants approached Vita and commissioned Vita to create the design and specifications for the Deployment System.

24. Plaintiff disclosed the trade secrets to Defendant Foro pursuant to the parties' NDA. The NDA restricts Foro's usage of Vita's confidential information and trade secrets to the parties' joint development of the deployment prototype. That relationship ended in March 2015.

25. However, Foro utilized the trade secrets and confidential information for its own benefit. Foro knew, or had reason to know, that it was improper and illegal to disclose the design and specifications for the Deployment System under the NDA and thus breached the NDA by disclosing the information to Hytech and DECK after receiving the confidential information. On information and belief, Foro has disclosed the trade secrets to other third parties for Foro's own benefit in an arrangement similar to the way it did with Hytech and DECK, which is in further breach of the parties' NDA.

26. Foro knew it had a contractual duty to maintain the secrecy of the trade secret and limit the use of the trade secret. Plaintiff did not consent to Foro's disclosure of the trade secrets to any third parties. Plaintiff did not consent to use of the trade secret by Defendant Foro.

27. Foro continues to use, disclose, or access the confidential information and trade secrets at issue after the initial misappropriation.

28. Plaintiff seeks its actual damages stemming from Defendant's misappropriation of the trade secrets and seeks disgorgement of any unjust enrichment obtained by Defendants as a result of the misappropriation from May 11, 2016 to the present as follows:

i. *Avoidance of Cost*

By utilizing Plaintiff, Foro was able to utilize Vita's institutional knowledge of deployment systems and obtained the design and prototype much faster than if Foro had started from scratch or paid a third party to start from scratch. This would have taken at least between 3-4 years of additional time to test, build prototypes, study, and research deployment systems. This would have cost approximately $1.5 million to develop from scratch. Because of Vita's institutional knowledge, however, Foro was able to obtain the trade secrets that it ultimately misappropriated for approximately $20,000. Therefore, Foro obtained an avoidance of cost of $1,480,000.00 that it is liable to Plaintiff for damages, which, adjusted for present value, is approximately $2.1 million.

ii. *Development Costs*

Plaintiff invested approximately $165,000.00 in development costs to design the deployment system that involved the trade secrets at issue in this case. Foro is therefore liable for this amount in damages to Plaintiff.

iii. *Reasonable Royalties*

Plaintiff is also entitled to reasonable royalties in an amount to be determined at trial.

iv. *Profit Disgorgement*

Plaintiff is entitled to all profits that Foro has derived from the illicit continued utilization of the trade secrets in violation of the DTSA.

v. *Lost Profits*

Plaintiff is entitled to all lost profits resulting from Foro's violations of the DTSA in an amount to be determined at trial.

vi. *Misappropriation Investigation*

Plaintiff is entitled to all time and resources expended in investigating the misappropriation in an amount to be determined at trial.

29. Plaintiff further seeks exemplary damages and attorneys' fees because the trade secrets were willfully and maliciously misappropriated.

### Count 2:  Misappropriation of Trade Secrets under Tex. Civ. Prac. & Rem. Code §§ 134A.001 *et seq.* (TUTSA)

30. Plaintiff incorporates all paragraphs of this Complaint in this cause of action as though here set out in full.

31. Plaintiff owns valuable trade secrets in the design and specifications of the Vita Deployment System, which is used in the oil and gas products and services industry in interstate and foreign commerce.

32. Plaintiff took reasonable measures to protect the design and specifications of the Vita Deployment System through the NDA.

33. The design and specifications of the Vita Deployment System derives independent economic value from not being generally known to, and not being readily ascertainable through proper means by, another person who can obtain economic value from the disclosure or use of the information. This is, in fact, why Defendants approached

Vita and commissioned Vita to create the design and specifications for the Deployment System.

34. Plaintiff disclosed the trade secrets to Defendant Foro pursuant to the parties' NDA. The NDA restricts Foro's usage of Vita's confidential information and trade secrets to the parties' joint development of the deployment prototype. That relationship ended in March 2015.

35. However, Foro utilized the trade secrets and confidential information for its own benefit. Foro knew, or had reason to know, that it was improper and illegal to disclose the design and specifications for the Deployment System under the NDA and thus breached the NDA by disclosing the information to Hytech and DECK after receiving the confidential information. On information and belief, Foro has disclosed the trade secrets to other third parties for Foro's own benefit in an arrangement similar to the way it did with Hytech and DECK, which is in further breach of the parties' NDA.

36. Foro knew it had a contractual duty to maintain the secrecy of the trade secret and limit the use of the trade secret. Plaintiff did not consent to Foro's disclosure of the trade secrets to any third parties. Plaintiff did not consent to use of the trade secret by Defendant Foro.

37. Plaintiff seeks its actual damages stemming from Defendant's misappropriation of the trade secrets and seeks disgorgement of any unjust enrichment obtained by Defendants as a result of any and all violations of TUTSA at any time as follows:

ii. *Avoidance of Cost*

By utilizing Plaintiff, Foro was able to utilize Vita's institutional knowledge of deployment systems and obtained the design and prototype much faster than if Foro

had started from scratch or paid a third party to start from scratch. This would have taken at least between 3-4 years of additional time to test, build prototypes, study, and research deployment systems. This would have cost approximately $1.5 million to develop from scratch. Because of Vita's institutional knowledge, however, Foro was able to obtain the trade secrets that it ultimately misappropriated for approximately $20,000. Therefore, Foro obtained an avoidance of cost of $1,480,000.00 that it is liable to Plaintiff for damages, which, adjusted for present value, is approximately $2.1 million.

ii. *Development Costs*

Plaintiff invested approximately $165,000.00 in development costs to design the deployment system that involved the trade secrets at issue in this case. Foro is therefore liable for this amount in damages to Plaintiff.

iii. *Reasonable Royalties*

Plaintiff is also entitled to reasonable royalties in an amount to be determined at trial.

iv. *Profit Disgorgement*

Plaintiff is entitled to all profits that Foro has derived from the illicit continued utilization of the trade secrets in violation of TUTSA.

v. *Lost Profits*

Plaintiff is entitled to all lost profits resulting from Foro's violations of TUTSA in an amount to be determined at trial. This includes, but is not limited to, the market impact caused by Foro's wrongful disclosures of the trade secrets.

vi. *Misappropriation Investigation*

Plaintiff is entitled to all time and resources expended in investigating the misappropriation in an amount to be determined at trial.

38. Plaintiff further seeks exemplary damages and attorneys' fees because the trade secrets were willfully and maliciously misappropriated.

### Count 3:  Breach of Contract (Texas Common Law)

39. Plaintiff incorporates all paragraphs of this Complaint in this cause of action as though here set out in full.

40. Plaintiff owns valuable trade secrets in the design and specifications of the Vita Deployment System, which is used in the oil and gas products and services industry in interstate and foreign commerce.

41. Plaintiff disclosed the trade secrets to Defendant Foro pursuant to the parties' NDA.  The NDA restricts Foro's usage of Vita's confidential information and trade secrets to the parties' joint development of the deployment prototype. That relationship ended in March 2015.

42. However, Foro utilized the trade secrets and confidential information for its own benefit as well as disclosed the trade secrets and confidential information to third parties, including Hytech and DECK and thus breached the NDA.

43. Vita and Foro had a valid and enforceable agreement.  Vita fully performed under the agreement and was ready, willing, and able to perform.  Foro was not excused from performance and performance was not otherwise waived.  Foro materially breached the agreement.

44. Plaintiff seeks both direct and consequential damages stemming from Defendant's breach of the parties' agreement in an amount to be determined at trial.  This

includes, but is not limited to, the market impact caused by Foro's wrongful disclosures of the trade secrets.

45. Plaintiff further seeks its reasonable and necessary attorneys' fees pursuant to Chapter 38 of the Texas Civil Practice & Remedies Code.

## CONDITIONS PRECEDENT

46. All conditions precedent to Plaintiff's claims have occurred or have been waived.

## JURY DEMAND

47. Plaintiff demands a trial by jury on all issues.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief and judgment as follows:

a. awarding actual damages (including direct and consequential);

b. awarding development costs damages;

c. awarding reasonable royalties;

d. awarding avoidance of costs damages;

e. awarding lost profits (including market impact lost profits);

f. awarding Defendant's profits obtained as a result of misappropriation;

g. awarding misappropriation investigation costs;

h. awarding reasonable attorney's fees;

i. exemplary damages;

j. pre-and post-judgment interests and costs; and

k. all other relief to which Plaintiff is entitled in law or equity.

Respectfully submitted,

CAMARA & SIBLEY LLP

/s/ Joseph D. Sibley_____
Joseph D. Sibley
State Bar No. 24047203
sibley@camarasibley.com
Camara & Sibley LLP
4400 Post Oak Pkwy.
Suite 2700
Houston, Texas 77027
Telephone: (713) 966-6789
Fax: (713) 583-1131

**ATTORNEYS FOR PLAINTIFF**

## CERTIFICATE OF SERVICE

This is to certify that on this the 3rd day of September, 2019, a true and correct copy of the above and foregoing instrument was properly forwarded to all counsel of record via email.

/s/ Joe Sibley_____
Joe Sibley